CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 10 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT CHARLES GLEASON, JR., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> EDDIE L. PEARSON, Warden, ) <br> Sussex I State Prison, ) <br> ) <br> Respondent. ) | Civil Action No. 7:12CV00619 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Chief United States District Judge |

      Robert Charles Gleason, Jr. is scheduled to be executed on January 16, 2013 for murdering Harvey Watson, his cellmate at Wallens Ridge State Prison, and for murdering Aaron Cooper, a fellow inmate at Red Onion State Prison. Gleason has plainly and clearly expressed his desire to forgo any challenges to his death sentences, and he has steadfastly rejected legal assistance to spare his life. Contrary to Gleason's directives, Jonathan Sheldon and Joseph Flood, Gleason's appointed state habeas counsel, commenced proceedings in this court by filing a motion for appointment of counsel.[1] Citing 18 U.S.C. § 3599 and McFarland v. Scott, 512 U.S. 849 (1994), the movants' initial filing requests an order appointing themselves and another attorney to represent Gleason in any federal habeas corpus proceedings under 28 U.S.C. § 2254. Following oral argument on January 4, 2013, the movants were given the opportunity to submit additional evidence in support of the motion. The movants have now filed a motion to determine competency, in which they request that the court enter a stay of execution, conduct an evidentiary hearing regarding Gleason's competence to waive further review, and appoint them for the purpose of adjudicating the competency issue. The movants have also filed a motion for discovery. For the reasons set forth below, the motions will be denied.

---

[1] The court will hereinafter refer to Sheldon and Flood as "the movants."

## Background

In affirming Gleason's sentences of death on direct appeal, the Supreme Court of Virginia provided the following summary of Gleason's crimes:

> On May 8, 2009, Harvey Watson was murdered at Wallens Ridge State Prison. His cellmate, Robert Gleason, was charged with the "willful, deliberate, and premeditated killing of any person by a prisoner confined in a state or local correctional facility," a capital offense under Code § 18.2-31(3). On December 21, 2010, following an evaluation to confirm his competency, Gleason pled guilty to the murder of Watson in the Circuit Court of Wise County. Gleason confessed under oath, stating that he planned the murder to occur on the two-year anniversary of a previous homicide that he had committed.
>
> Gleason admitted to binding Watson with torn bed sheets, beating him, taunting him about his impending death, shoving a urine sponge in his face and a sock in his mouth, and finally strangling him with fabric from the sheet. According to Gleason, he concealed the body in his cell for fifteen hours, making excuses for Watson's failure to emerge. Gleason further stated that he planned, once rigor mortis had passed, to dispose of the body in the garbage that was circulated to pick up food trays. Gleason was unsuccessful in disposing of the body before Watson was discovered by prison personnel.
>
> Throughout the circuit court proceedings, Gleason consistently repeated that he had no remorse. Rather, knowing that the premeditated murder of an inmate and more than one murder within a three-year period was punishable by the death penalty in Virginia, he commented to the court that he "already had a few [other] inmates lined up, just in case I didn't get the death penalty, that I was gonna take out."
>
> Following Watson's death, Gleason had been moved to solitary confinement in Virginia's "supermax" Red Onion Prison. On July 28, 2010, Gleason was in a solitary recreation pen that shared a common wire fence with that of Aaron Cooper. Gleason asked Cooper to try on a "religious necklace" that Gleason was making. Gleason proceeded to strangle Cooper through the wire fence, repeatedly choking Cooper "til he turned purple," waiting "until his color came back, then [going] back again" until Cooper finally expired. Gleason described himself laughing at the reaction of the other inmates. He then watched and mocked the prison staff attempting to revive Cooper.
>
> Gleason was charged in the capital murder of Cooper under Code § 18.2-31(8) for "[t]he willful, deliberate, and premeditated killing of more than one person within a three-year period." On April 22, 2011, Gleason pled guilty to the murder of

2

> Cooper. He informed the court that he had deliberately targeted Cooper so as to make a point to the prosecutor and as a favor to another inmate who was to be released soon, so that the inmate would owe Gleason, and Gleason would then have someone outside the prison to do his bidding.

Gleason v. Commonwealth, 726 S.E.2d 351, 352-53 (Va. 2012).

After accepting Gleason's pleas of guilty to the capital murder charges, the Circuit Court of Wise County conducted a joint, multi-day sentencing hearing. Gleason represented himself at the hearing with the assistance of stand-by counsel. On September 6, 2011, after considering the evidence and argument presented by counsel and Gleason, the Circuit Court sentenced Gleason to death for both murders, finding that the aggravating factors of vileness and future dangerousness had been proven beyond a reasonable doubt.

While his cases were before the Circuit Court, Gleason filed a document expressing his desire to "waive[ ] all right of appeal in all of these cases and specifically and emphatically request[ing] that no one, attorney or otherwise, file any appeal[s] on his behalf in any of these cases." (Joint Appendix at 244.)[2] Leigh D. Hagan, Ph.D., the psychologist appointed to evaluate Gleason on the defense's motion prior to sentencing, was also appointed to determine whether Gleason possessed the capacity to waive his right to appeal his death sentences.

On September 19, 2011, the Circuit Court conducted a hearing on the matter. After questioning Gleason and receiving testimony and a written report from Dr. Hagan, the Circuit Court granted Gleason's motion to waive his right to appeal. The Circuit Court found that Gleason was competent to make a decision regarding whether or not to exercise his right to appeal; that he possessed the adequate level of intelligence to make the decision; that he was not suffering from a mental illness that would render him unable to make an informed decision; that he had the

---
2 The court will hereinafter refer to the joint appendix filed on direct appeal as "J.A."

3

capacity to make reasoned choices; and that his decision was made knowingly, voluntarily, and intelligently. (J.A. 1605-06.)

The Circuit Court entered an amended final sentencing order on September 19, 2011. Despite Gleason's waiver of his right to appeal the death sentences, the Virginia Supreme Court was required to review the sentences under Virginia Code § 17.1-313. On June 7, 2012, after briefing and oral argument, the Supreme Court upheld the death sentences, finding that they "were not imposed under the influence of passion, prejudice, or any other arbitrary factor and are not excessive or disproportionate." Gleason v. Commonwealth, 726 S.E.2d 351, 354 (Va. 2012). Gleason did not seek a rehearing or petition the United States Supreme Court for certiorari.

After Gleason's death sentences were affirmed on direct appeal, the movants were appointed to represent Gleason during the course of any state habeas proceedings, pursuant to the mandatory appointment provision set forth in Virginia Code § 19.2-163.7. Gleason ultimately forbade the filing of a state habeas petition, and no petition was filed on his behalf.

On October 3, 2012, the movants filed in the Virginia Supreme Court a "motion to establish jurisdiction prior to filing a petition for writ of habeas corpus." (Docket No. 4-8.) The movants stated that Gleason was refusing to permit the filing of a habeas petition. They requested the Supreme Court to establish which court would have jurisdiction to determine whether Gleason was competent to waive habeas review. The Attorney General of Virginia filed a brief in opposition to the motion, arguing that Gleason had not requested the relief sought, and that the movants were attempting to intervene against Gleason's wishes without standing to do so. The Supreme Court denied the motion in a summary order entered on October 17, 2012.

4

## The Instant Motions

On December 20, 2012, the movants initiated proceedings in this court by filing a motion for appointment of counsel, in which they expressed concerns regarding Gleason's competence. Following the filing of a brief in opposition by the respondent, the movants argued their motion on January 4, 2013. During that proceeding, the court also received argument by Katherine Burnett, the Senior Assistant Attorney General representing the respondent, as well as a statement by Gleason.

When given the opportunity to address the court, Gleason plainly and clearly stated that he wants to maintain his current execution date, that he does not want to pursue federal habeas corpus relief, and that he does not want the movants or any other attorney to attempt to pursue such relief on his behalf. Gleason confirmed that he has spoken to family members, friends, and officers about his decisions. Gleason emphasized that he has hurt people, that he deserves the punishment imposed for his crimes, and that there is no valid reason to delay his execution. When questioned by the court regarding what he wants to occur, Gleason responded as follows: "I don't want an attorney. I want to let the January 16th [execution] day go as is." (Docket No. 14 at 22.)

Following the proceeding, the movants requested that the court delay its ruling on the motion for appointment of counsel, pending the submission of additional evidence regarding Gleason's alleged incompetence. The court ultimately granted the request and gave the movants until 5:00 p.m. on January 9, 2013 to submit any additional evidence in support of the motion for appointment of counsel.

Minutes before the deadline set forth in the court's order, the movants filed a motion to determine Gleason's competency to waive proceedings. Shortly after the deadline, the movants

5

filed a memorandum in support of the second motion, along with a number of exhibits. The exhibits include, among other submissions, declarations from the movants and other attorneys; a declaration from Eileen P. Ryan, D.O., a psychiatrist who evaluated Gleason's competency to stand trial in March of 2010 in connection with the first capital murder case; records from Gleason's July 1998 admission to John Umstead Hospital in Butner, North Carolina following an overdose; and prison records indicating that Gleason was placed on "hunger strike protocol" in June of 2012 after missing several consecutive meals.

On January 10, 2013 at 1:46 p.m., the movants filed a motion for discovery. Emphasizing that their motion for appointment of counsel under 18 U.S.C. § 3599 is currently pending, the movants request an order directing Sussex I State Prison to disclose Gleason's medical and psychiatric records, and directing the Attorney General of Virginia to disclose "any and all of its communications" with Gleason. (Docket No. 26 at 1.)

## Discussion

Federal courts are courts of limited jurisdiction. "They are not generalized overseers of the state court systems, not even in death penalty cases." West v. Bell, 242 F.3d 338, 341 (6th Cir. 2001). Although death row inmates can invoke the jurisdiction of the federal courts by filing a petition for writ of habeas corpus under § 2254, Gleason has elected not to do so.

Under existing United States Supreme Court precedent, a third party, or "next friend," may challenge the validity of a death sentence imposed on a capital defendant who has elected to forgo further review only if the third party has standing to do so. See Whitmore v. Arkansas, 495 U.S. 149, 162-64 (1990); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990). The "burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the

6

court." Whitmore, 495 U.S. at 164. A prerequisite to "next friend" standing is "a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability." Id. at 165. In attempting to meet this requirement, the "usual explanation" proffered by a party seeking next friend standing is an inmate's mental incompetency. Sanchez-Velasco v. Sec'y of the Dep't of Corr., 287 F.3d 1015, 1029 (11th Cir. 2002).

In this case, the movants have not expressly sought to obtain next friend standing. Instead, they seek to be appointed as counsel, to stay Gleason's execution, to obtain discovery, and to have an evidentiary hearing on Gleason's competence, so that they can, apparently, attempt to establish standing to file a petition for writ of habeas corpus on Gleason's behalf. As the respondent has emphasized, however, there is no authority for the process proposed by the movants. Neither 18 U.S.C. § 3599 (requiring the appointment of counsel for an indigent death row inmate who wishes to file a habeas corpus petition), nor McFarland v. Scott, 512 U.S. 849, 859 (1994) (concluding that "a capital defendant may invoke the right to a counseled habeas corpus proceeding by filing a motion requesting the appointment of habeas counsel, and that a district court has jurisdiction to enter a stay of execution where necessary to give effect to that statutory right"), mandate the appointment of counsel or a stay of execution, regardless of an inmate's wishes. See West, 242 F.3d at 341 (holding that "McFarland applies, at most, to a prisoner's seeking counsel to file a habeas, or, perhaps a qualified next friend seeking time to prepare a habeas petition) (emphasis added). Instead, to intervene against an inmate's wishes, the requirements of Whitmore must be met. Id. In this case, the court is convinced that the movants have failed to establish their entitlement to proceed under this precedent.

7

The Circuit Court of Wise County considered Gleason's mental capacity on multiple occasions, and was "meticulous" in ensuring that Gleason was competent to stand trial; that he had the ability to knowingly and voluntarily plead guilty to both charges of capital murder; and that he was capable of representing himself at sentencing with the assistance of stand-by counsel. Gleason, 726 S.E.2d at 353. Likewise, following an evidentiary hearing and the submission of an additional competency evaluation by Dr. Hagan, the Circuit Court found that Gleason had the capacity to decide whether or not to exercise his right to appeal, and that Gleason's decision to waive this right was made knowingly, voluntarily, and intelligently.

The Circuit Court's findings, and the ultimate decision that Gleason was competent to waive further challenges to his convictions and death sentences, are factual in nature and are entitled to a presumption of correctness under Demosthenes v. Baal, supra, and 28 U.S.C. § 2254(e)(1). See Demosthenes, 495 U.S. at 735 (concluding that a state court's competency determination is entitled to a presumption of correctness on federal habeas review); 28 U.S.C. § 2254(e)(1) (providing that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct"); see also Daughtry v. Polk, 190 F. App'x 262, 275 (4th Cir. 2006) ("Whether a defendant is competent is a question of fact. We also must accord the state court's determination that Daughtry was competent . . . a presumption of correctness under 28 U.S.C. § 2254(e)(1)."); Sanchez-Velasco, 287 F.3d at 1030 ("The district court failed to give the state courts' determination that Sanchez-Velasco was mentally competent to decide for himself whether to pursue further challenges to his conviction and death sentence the presumption of correctness it was entitled to under Demosthenes"); Akers

8

v. Angelone, 147 F. Supp. 2d 447, 449 (W.D. Va. 2001) (holding that a state court's competency determination was entitled to deference). This presumption of correctness "can be overcome only if the party challenging the inmate's mental competency comes forward with evidence that clearly and convincingly establishes incompetency." Sanchez-Velasco, 287 F.3d at 1030; see also U.S.C. § 2254(e)(1).

In their 38-page memorandum filed on January 9, 2013, the movants make no specific reference to the presumption of correctness afforded to a state court's competency determination. Instead, relying on a declaration from Dr. Ryan, the movants emphasize that "[a]ny competency determination, by its nature, is temporal," and that the Circuit Court's most recent competency determination was made over a year ago. (Docket No. 23 at 5, n.1.) While the court recognizes that this is more time than had elapsed between the state court findings and the filing of the federal habeas corpus petition in Demosthenes, it is not so much time as to eliminate the presumption of correctness to which the Circuit Court's factual findings, and its ultimate competency determination, are entitled. See Sanchez-Velasco, 287 F.3d at 1030-31 (holding that "the district court should have accepted as correct the state court's finding," made over two years earlier, "that Sanchez-Velasco is mentally competent to decide his legal fate"); Akers, 147 F. Supp. 2d at 450-51 (applying the presumption of correctness to the state court's competency determinations, which were made nearly a year before an attorney attempted to file a federal habeas petition on the death row inmate's behalf).

The movants also argue that that there are "serious reasons" to doubt the validity of the Circuit Court's competency findings, and that "[t]his court should therefore conduct proceedings sufficient to determine [Gleason's] competency to assist counsel and waive post-conviction

9

review, including an evidentiary hearing." (Docket No. 23 at 5.) Having considered the evidence proffered by the movants and the relevant case law, the court is unable to agree.

"In the face of a state court determination that the real party in interest inmate is mentally competent, in order to be entitled to a federal evidentiary hearing on the issue[,] a would-be next friend must proffer evidence that does one of two things." Sanchez-Velasco, 287 F.3d at 1030. Specifically, "[t]he proffered evidence either must clearly and convincingly establish that the state court finding was erroneous when made, or it must show that even though the state court finding was correct when made[,] the mental condition of the inmate has deteriorated to the point that he is no longer mentally competent." Id. Applying this standard, the court concludes that the movants have failed to proffer sufficient evidence to overcome the presumption of correctness afforded to the Circuit Court's competency findings, and that there is no valid basis for further inquiry into the issue of Gleason's competence.

The Circuit Court's determination that Gleason was competent to waive the right to appeal his sentences of death was based, at least in part, on the testimony and written opinions of Dr. Hagan, who was specifically appointed to evaluate Gleason's capacity in this regard. While the movants now challenge the validity of Dr. Hagan's most recent competency report from August of 2011, the court finds the movants' arguments unpersuasive. Aside from arguing, in a conclusory fashion, that "Dr. Hagan unreasonably relied almost exclusively on Mr. Gleason's self-report to find him competent," (Docket No. 23 at 17), the movants' only other challenge to the validity of Dr. Hagan's report is that it makes no mention of Gleason's admission to John Umstead Hospital in 1998, following an overdose. Even assuming, however, that Dr. Hagan did not consider these hospital records, the movants have failed to demonstrate that the records would have altered Dr.

10

Hagan's opinion that Gleason was competent to waive further review, or that the Circuit Court's competency determination was based on clear error.[3]  See Demosthenes, 495 U.S. at 736-37 (holding that evidence of a death row inmate's prior suicide attempts did not provide meaningful evidence of incompetency, and that the district court correctly denied a motion for further evidentiary hearing on the inmate's competence to waive his right to proceed); Dennis v. Butko, 378 F.3d 880, 892 (9th Cir. 2004) ("[E]vidence of suicidal ideation or attempts to commit suicide in the past is insufficient to demonstrate incompetency.").

The movants' January 9, 2013 memorandum also purports to outline "current evidence of [Gleason's] incompetence." (Docket No. 23 at 26.) This evidence, however, consists solely of declarations from the movants and other attorneys opining that Gleason's mental capacity has declined in more recent months, as well as the prison records indicating that Gleason was placed on hunger strike protocol after missing meals. While the movants have ample experience defending capital cases, they are not mental health experts, and the court is convinced that neither their declarations, nor the prison records, provide credible evidence that Gleason's mental capacity has "deteriorated to the point that he is no longer mentally competent." Sanchez-Velasco, 287 F.3d at 1030; see also Akers, 147 F. Supp. 2d at 451 (dismissing a habeas petition filed by an attorney against the wishes of a death row inmate, where the attorney offered "no credible evidence that [the inmate's] mental condition [had] changed" since the state court's competency findings were made); Smith v. Armontrout, 865 F.2d 1502, 1506 (8th Cir. 1988) (holding "that the new allegations of fact made by the next friends, even when supplemented by the three new

---

[3] The court must note that the hospital records were among the documents reviewed by Dr. Ryan in March of 2010, when she determined that Gleason was competent to stand trial. (J.A. 1694.)

11

psychiatric affidavits," did not warrant a new evidentiary hearing on a death row inmate's competence); Evans v. McCotter, 805 F.3d 1210, 1214 (5th Cir. 1986) (holding that an affidavit from a death row inmate's sister, which stated that the inmate's mental condition had worsened, was insufficient to overcome the state court's sanity determination, or otherwise warrant an evidentiary hearing in federal court).

Sheldon's declaration also indicates that he spoke to Gleason by telephone on January 8, 2013. According to the declaration, Sheldon asked Gleason "whether he wanted the execution stopped or whether he wanted to die." (Docket No. 23-1 at 2.) In response, Gleason noted that he had "never said [he] wanted to die." (Id.) While the movants reference Gleason's response in their January 9, 2013 memorandum, they wisely refrain from suggesting that Gleason now wishes to pursue federal habeas relief. Succinctly stated, the fact that a death row inmate does not "want to die" does not mean that he wishes to pursue a legal challenge to his sentence of death or seek to stay his execution. As set forth above, Gleason plainly and clearly stated in court on January 4, 2013 that he wishes to maintain his current execution date, and that he does not want the movants or any other attorney to intervene on his behalf.

## Conclusion

In sum, the evidence presented by the movants, either standing alone or when considered in combination with other submissions, does not clearly and convincingly establish that the Circuit Court's competency findings were clearly erroneous. Likewise, the movants have failed to proffer sufficient evidence to establish that Gleason's condition has deteriorated to the point that he is no longer competent to waive further review. Accordingly, "no adequate basis exists for the

12

exercise of federal power" in this matter, <u>Demosthenes</u>, 495 U.S. at 737, and the pending motions must be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to Gleason and all counsel of record.

ENTER: This 10th day of January, 2013.

/s/ Glen Conrad
Chief United States District Judge

13